UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE BROWAND,<br><br>　　Plaintiff,<br><br>　　v.<br><br>ERICSSON INC., et al.,<br><br>　　Defendants. | Case No. 18-cv-02380-EMC<br><br>**ORDER REMANDING CASE AND DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT**<br><br>Docket No. 13, 19 |

Plaintiff Leslie Browand sued Defendants Ericsson, Inc., EUS, Inc., Sanuj Pachouri, and Does 1-100 in state court for allegedly discharging her on the basis of her gender and in retaliation for whistleblowing activities. After Defendants removed the case to federal court, the Court issued an order to show cause why the case should not be remanded for lack of federal subject matter jurisdiction. For the reasons explained below, the case is **REMANDED**.

## I.　FACTUAL AND PROCEDURAL HISTORY

The Court relies on the allegations in Plaintiff's original complaint because it is the operative version for removal analysis. *See Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1117 (9th Cir. 2002).

Plaintiff was an "Instruction Manager – Level 3" at Ericsson, Inc. from March 2013 through September 7, 2017, when Ericsson terminated her employment via layoff. *See* Compl. at ¶¶ 11, 21. Plaintiff claims that Defendants discriminated against her based on her age and gender (she is over 40 and female) in violation of California's Fair Employment and Housing Act (FEHA), wrongfully terminated her in violation of public policy, retaliated against her for whistleblowing under California Labor Code § 1102.5, invaded her privacy, misrepresented her employment status, and intentionally inflicted emotional distress on her. *Id.* at ¶ 1.

Plaintiff alleges that, before her layoff, Ericsson engaged in fraudulent practices and that she criticized these practices within the company. *Id.* at ¶¶ 18-19. Specifically, Plaintiff alleges Defendant Sanuj Pachouri, her manager, instructed her team to work on projects before finalizing a purchase order or other written agreement with their customer, Verizon. *Id.* at ¶ 12. Due to this practice, Plaintiff and other employees were unable to bill some of their time working on Verizon's projects. *Id.* at ¶ 13. Plaintiff and other employees were also told not to bill their overtime work on these projects. *Id.* at ¶ 14.

According to Plaintiff, these practices gave the false appearance that projects cost less to Ericsson than they actually did. *Id.* Vice Presidents were awarded bonuses for these under-budget projects and Ericsson then paid them bonuses they did not truly earn. *Id.* As a result of these practices, shareholders were provided with false information about the company's financials. *Id.* at ¶ 18. During her last six months of employment, Plaintiff states she was a vocal critic of these accounting irregularities: she "spoke out in meetings, complained directly to Defendant Pachouri, raised [the issue] repeatedly with her project manager and reported her concerns in writing in her . . . review." *Id.* at ¶ 19.

As a result, Plaintiff alleges she suffered "harassment, discrimination, and retaliation." *Id.* at ¶ 20. Specifically, Plaintiff alleges that she was removed "from the organizational chart during her medical leave," false comments were entered on her performance review, Pachouri refused to shake her hand when shaking other people's hands, refused to contact her, "engaged in rude, bullying behavior toward Plaintiff and other females," excluded her from work events, offered trainings to males that were not offered to females, gave male employees raises but not female employees, created opportunities for male employees and not female employees, allowed male employees to deal drugs at work, and engaged in other kinds of special treatment toward male employees. *Id.* Plaintiff alleges that she was harassed in a "despicable and outrageous" manner. *Id.* at ¶ 48.

## II.     <u>LEGAL STANDARD</u>

Defendants bear the burden of establishing federal subject matter jurisdiction. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988). This burden is substantial: the

2

removal statute is "strictly construed against removal jurisdiction and any doubt is resolved in favor of remand." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)).

### III. DISCUSSION

Defendants removed on the basis of federal question and diversity jurisdiction. *See* Notice of Removal at ¶¶ 4, 9. The Court analyzes each basis for jurisdiction in turn.

A. Federal Question Jurisdiction

In her Complaint, Plaintiff brings only state law causes of action. Compl. at ¶ 1. Defendants claim two of Plaintiff's state law claims raise a federal question: wrongful termination in violation of federal public policy and violation of California Labor Code Section 1102.5. Resp. to Order to Show Cause at ¶ 4. Plaintiff asserts two public policy bases for both claims: retaliation for protected activity under Sarbanes-Oxley (SOX), a federal statute, and discrimination contrary to California's Fair Employment and Housing Act (FEHA). Compl. at ¶¶ 29, 34. Defendants allege that these Causes of Action necessarily and substantially rely on interpreting the requirements of SOX, creating federal question jurisdiction over Plaintiff's claims. Resp. to Order to Show Cause at 5.

In a recent case, *Gunn v. Minton*, the Supreme Court summarized the test for federal question jurisdiction when only state law causes of action are asserted:

> [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met . . . jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citation omitted).

Here, Defendants cannot establish federal question jurisdiction over Plaintiff's claims because Plaintiff does not raise a necessary or substantial question of federal law.

1. Necessity

Neither of Plaintiff's claims necessarily turns on a question of federal law.

3

Plaintiff's wrongful termination claim "arises under the public policies of the State of California and the United States, and Ericsson's retaliation against Plaintiff and ultimate termination of her employment was in violation of such policies, including those set forth in Sarbanes Oxley Act of 2002 *and related statutes and regulations prohibiting fraud against shareholders and misreporting financial data to shareholders*, those set forth in the FEHA, and related statutes and regulations prohibiting discrimination, harassment and retaliation due to age, gender, and disability." Compl. ¶ 29 (emphasis added). Similarly, Plaintiff's Section 1102.5 whistleblower claim alleges that "Plaintiff engaged in protected activity under the Labor Code by complaining to Ericsson, including her manager and to those who could correct the illegalities about their FEHA violations, SOX violations and other illegal conduct." Compl. ¶ 34.

Thus, Plaintiff alleges her termination violated public policy both because it was discriminatory on the basis of gender and also because it constituted retaliation for blowing the whistle on securities fraud. And she alleges retaliation under § 1102.5 for reporting violations of both state law (FEHA), federal law (SOX), and other unspecified "illegal conduct."

Usually, "[w]hen a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996). It is not clear whether the alternative theories underlying a state law claim must further substantively similar public policies. For example, in *Rains*, the plaintiff alleged wrongful discharge that violated the public policy underlying both FEHA and Title VII. The Ninth Circuit held that alternative pleading did not create federal question jurisdiction over the wrongful discharge claim because "the complaint merely incorporates Title VII as one of several *similar* sources of public policy supporting defendant's state law claims." *Id.* at 344 (emphasis added). On the other hand, neither party has cited any case holding that absent similar sources of public policy, alternative bases do not suffice.

The Court need not resolve the question because, setting the FEHA allegations aside, California has "similar sources of public policy" to SOX's whistleblower protections. *Id.* at 344. Although Plaintiff's complaint refers only generally to other statutes, *see* Compl. ¶ 29 (referring to

4

SOX "and related statutes and regulations prohibiting fraud against shareholders and misreporting financial data to shareholders"), it is of no consequence that Plaintiff "did not refer . . . to a specific state statute . . . in his complaint." *Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1314 (9th Cir. 1997) (where plaintiff alleged only that he was "terminated for 'blowing the whistle' on illegal activity of defendant . . . illegally billing the U.S. Air Force which is funded with taxpayers' money" without identifying a particular statute, there was no necessary federal question under the federal False Claims Act because California's Section 1102.5 provided similar protections for whistleblowers).

Here, SOX is intended to "protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws, and for other purposes." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat 745 (2002). California law also prohibits the same kinds of fraudulent misrepresentations in the selling of securities. *See* Cal. Corp. Code § 25401 ("It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."). Furthermore, SOX prohibits covered companies from retaliating against employees who "provide information . . . which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). Similarly, California Labor Code Section 1102.5 protects employees from retaliation for providing information "if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Cal. Labor Code § 1102.5(b). Thus, California and the United States both have public policies against fraudulent misrepresentation in the sale of securities, as well as public policies against retaliation against employees who blow the whistle on such illegality.

For these reasons, Plaintiff's wrongful discharge and § 1102.5 claims both plead an

5

alternative basis under state public policy. Resolution of a federal question is therefore not "necessary" for Plaintiff to prevail.

2. Substantiality

Even if there were a "necessary" question, it would not be substantial. To determine if a federal question is "substantial," "it is not enough that the federal issue be significant to the particular parties in the immediate suit," but rather depends on "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 258.

In *Gunn*, for example, a plaintiff brought a state malpractice case against an attorney for his performance in patent litigation. The Supreme Court accepted that the malpractice claim would "necessarily require application of [federal] patent law to the facts of [the plaintiff's] case." *Id.* at 259. However, it found that the case was not significant to the federal system as a whole for several reasons, including "the backward-looking nature of a legal malpractice claim" that "would not change the real-world result of the prior federal patent litigation," *id.* at 261, that permitting the case would not "undermine 'the development of a uniform body of [patent] law'" because "the federal courts are . . . not bound by state court case-within-a-case patent rulings," *id.* at 261-62, and that even if a state case raised "more novel questions of patent law . . . for the first time," such questions "will at some point be decided by a federal court in the context of an actual patent case." *Id.* at 262. Indeed, "[i]f the question arises frequently, it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests." *Id.* For those reasons, federal jurisdiction was not merited over the state law malpractice claim.

In contrast, cases where a substantial federal interest has been found involved issues like the federal government's interest in being able to recover delinquent taxes, *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310-311 (2005) (finding federal jurisdiction over a state law quiet title action alleging that the IRS had failed to comply with federal notice requirements so that the seizure and sale of property were invalid), or whether the federal government's issuance of bank bonds is unconstitutional, *see Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921). In other words, they implicated the federal government's powers

6

or its abilities to carry out some sort of nationwide program; often, the interest of having federal courts adjudicate the issue strengthens the claim of a substantial federal interest. *See*, *e.g.*, *Grable*, at 545 U.S. at 315 (holding that "[t]he meaning of the federal tax provision [in a state quiet title action] is an important issue of federal law that sensibly belongs in a federal court" because it implicates "the ability of the IRS to satisfy its claims from the property of delinquents," so the government "has a direct interest in the availability of a federal forum to vindicate its own administrative action").

Defendants have not identified a similar federal interest here, and it is difficult to see one. This dispute is between private parties and, although Plaintiff's claims arguably may involve a federal statute (at least under one alternate theory), they do not involve a substantial interest of the federal government that would be advanced by hearing the claim in this court. Defendants could not even identify an important statutory provision raising some dispute, *e.g.*, of statutory construction that would warrant a heightened interest in having a federal court adjudicate the matter.

To the contrary, there is an argument that hearing Plaintiffs' claim could actually *undermine* federal interests. This case is similar to *Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1315 (9th Cir. 1997). There, the Ninth Circuit found that there was no federal interest in exercising federal jurisdiction over plaintiff's state common law claim for wrongful termination even though it was arguably premised on a violation of the federal False Claims Act (FCA) insofar as it alleged retaliation for reporting billing practices defrauding the government. *Campbell*, 123 F.3d at 1315. The court explained that the federal interest in exposing attempts to defraud the federal government was already well-served by the existing federal *qui tam* cause of action available under the FCA. *Id.* The FCA requires a plaintiff to satisfy certain procedural requirements before bringing a cause of action directly under the statute. *Id.* Allowing federal question jurisdiction over plaintiff's state law claim under the FCA would thus create a "backdoor" and thereby "derogate the very detailed requirements Congress chose to impose on *qui tam* FCA litigants." *Id.*

Similarly, here, Congress created a federal cause of action for whistleblowers under SOX,

7

the federal public policy implicated in Plaintiff's complaint. *See* 18 U.S. Code § 1514A(b)(1). Compliance with specific procedures is required by SOX: the plaintiff must first file a complaint with the Secretary of Labor and, if the Secretary of Labor has not made a final determination in the matter after 180 days, the complainant may then bring an action for *de novo* review in the district courts. *Id.* As in *Campbell*, allowing state law wrongful termination claims into federal court on the basis of alleged SOX violations could create a "backdoor" circumventing the SOX requirements to file an administrative claim with the Secretary of Labor before filing suit in district court. As in *Campbell*, exercising jurisdiction over this claim may undermine, not advance, federal interests.

In sum, Defendants do not show that Plaintiff's claims necessarily turn on resolution of a substantial federal question. Accordingly, federal question jurisdiction does not lie.

B. Diversity Jurisdiction

Defendants also assert diversity jurisdiction. *See* Notice of Removal at ¶ 9. To establish diversity jurisdiction, Defendants must show the amount in controversy exceeds $75,000 and plaintiffs and defendants are completely diverse (citizens of different states). 28 U.S.C.A. § 1332(a).

1. Amount in Controversy

The amount in controversy requirement is satisfied unless it is a "legal certainty" that it cannot be met. *Saint Paul Mercury Indemnity Co v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Here, Defendants estimate total damages alleged by Plaintiff at "a conservative minimum of $180,555." Notice of Removal at ¶ 27. Plaintiff does not contest the amount in controversy. The estimate is reasonable because Defendants calculate that Plaintiff would be owed $84,967.42 in back pay alone if she was in fact wrongfully terminated. Quazi Decl. at ¶ 8. Thus, the amount in controversy requirement is satisfied.

2. Diversity

Therefore, diversity jurisdiction turns on the citizenship of the parties. Plaintiff is a California citizen. Compl. at ¶ 4. The citizenship of Defendants is as follows.

**Ericsson, Inc.:** Defendant Ericsson, Inc. is a Delaware corporation with its principal place

of business in Texas. Quazi Decl. at ¶ 3. Therefore, there is diversity between Plaintiff and Defendant Ericsson, Inc.

**Doe Defendants:** Doe Defendants are ignored for diversity purposes. *See* 28 U.S.C.A. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

**EUS, Inc:** EUS, Inc. is a "d/b/a", or doing business as, of Ericsson, Inc. Quazi Decl. at ¶ 4. "The designation 'd/b/a' is merely descriptive of a corporation that does business under some other name and does not create a distinct corporate entity." *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. C & W Enterprises, Inc.*, 298 F. App'x 566, 567 (9th Cir. 2008). Therefore, EUS, Inc. shares Ericsson, Inc.'s state citizenship and is a citizen of Texas. Quazi Decl. at 4. Thus, there is diversity between Plaintiff and EUS, Inc.

**Pachouri:** Crucially, Defendant Sanuj Pachouri is a California citizen. Compl. at ¶ 6. Therefore, on the face of Plaintiff's pleadings, there is incomplete diversity between Plaintiff and Defendants because Pachouri and Plaintiff share California citizenship. If Pachouri's citizenship must be taken into account, then there is no diversity jurisdiction over Plaintiff's case.

a. <u>Fraudulent Joinder</u>

However, Defendants argue Pachouri was fraudulently joined and should therefore not be considered for diversity purposes. *See* Notice of Removal at ¶ 13. The test for fraudulent joinder is stringent. A federal court must find that a defendant was properly joined and remand the case to state court "'if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2012)) (emphasis in original). Fraudulent joinder is appropriate, *e.g.*, when a plaintiff's claims are precluded by a statute of limitations or a defendant's actions are privileged. *Id.* The Court should not find fraudulent joinder when a "defendant raises a defense that requires searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.* at 548-49. When evaluating a claim of fraudulent joinder, "the district court must

consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 550. If the plaintiff could cure this deficiency by amending his or her complaint, then fraudulent joinder does not obtain.

Plaintiff initially alleged four claims against Pachouri: wrongful termination, violation of California whistleblower law, false promise, and intentional infliction of emotional distress. Each is discussed below.

### i. Wrongful Termination and Violation of California Whistleblower Law

Plaintiff first two claims against Pachouri are precluded by law: only employers are liable for tortious wrongful discharge and violations of state law whistleblower protections, not employees or individual supervisors. *See Jacobs v. Universal Development Corp.*, 53 Cal. App. 4th. 692, 697 (1997) ("only an employer, and not individual employees, may be liable for tortious discharge"); *Tillery v. Lollis*, No. 1:14-CV-202025-KJM, 2015 WL 4873111, at *10 (E.D. Cal. Aug. 13, 2015) (state whistleblower protections do not create individual liability). These claims do not pass muster under the fraudulent joinder standard; indeed, they were subsequently removed in Plaintiffs' First Amended Complaint.

### ii. Manager's Privilege (Common Defense to False Promise and Intentional Infliction of Emotional Distress)

Two of Plaintiff's claims against Pachouri remain: false promise and intentional infliction of emotional distress.

Defendants argue both claims should be precluded by the manager's privilege, a common law doctrine "designed to further certain societal interests in fostering uninhibited advice by agents to their principals." *L.A. Airways, Inc. v. Davis*, 687 F.2d 321, 327 (9th Cir. 1982). Asserting the privilege, "a manager or agent may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests" without incurring liability in tort. *Olivet v. Frischling*, 104 Cal. App. 3d 831, 840–41 (Ct. App. 1980), disapproved of on other grounds by *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7

Cal. 4th 503, 869 (1994).

Defendants misapply the manager's privilege to Plaintiff's false promise and IIED claims. The overwhelming weight of authority has refused to apply the privilege to preclude claims that do not arise out of the conduct involved in a business tort of interference with contractual relations. *See Hernandez v. Ignite Rest. Grp., Inc.*, 917 F. Supp. 2d 1086, 1091 (E.D. Cal. 2013) (surveying California cases and finding almost no examples of a state or federal court applying the manager's privilege to *any* tort other than intentional interference with a contractual relationship). Many district courts have expressly refused to extend the privilege to other tort claims. *See also Webber v. Nike USA, Inc.*, No. 12-CV-00974 BEN WVG, 2012 WL 4845549, at *4 (S.D. Cal. Oct. 9, 2012) ("IIED is outside the scope of the managerial privilege."); *E.E.O.C. v. Interstate Hotels, L.L.C.*, No. C 04-04092 WHA, 2005 WL 885604, at *2 (N.D. Cal. Apr. 14, 2005) (allegations of harassment and discrimination fall outside the manager's privilege). The manager's privilege does not preclude Plaintiff's claims.

### iii. False Promise

False promise requires proving the elements of a fraud claim. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). "The elements of fraud or deceit . . . are: a representation, usually of fact, which is false, knowledge of its falsity, intent to defraud, justifiable reliance upon the misrepresentation, and damage resulting from that justifiable reliance." *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 72–73 (Ct. App. 1990) (citation omitted).

Defendants argue that Plaintiff's false promise claim, as a fraud claim, must be pled with particularity. *Stansfield*, 220 Cal. 3d. at 73 (fraud requires pleading facts that show how, when, where, to whom, and by what means false representations were made). Defendants are also correct that Plaintiff's pleading is deficient: she does not allege with specificity precisely when and by what means Defendant Pachouri made false representations to her. Compl. at ¶ 43. However, the Court cannot say that Plaintiff could not amend her complaint to plead with additional specificity. 889 F.3d at 550.

However, even if Plaintiff pleads with greater specificity, she would not be entitled to relief for another reason: she has not alleged a cognizable harm. Plaintiff alleges that, as a result

1  of Defendants' false promises, she did not look for new work. Compl. at 10. But looking for a
2  job is several steps removed from a tangible harm; the harm is "speculative, remote, contingent or
3  merely possible," rather than reasonably certain. *Toscano v. Greene Music*, 124 Cal.App.4th 685,
4  694 (2004); *cf. Grupe v. Glick*, 26 Cal.2d 680, 693 (1945) ("[W]here the operation of an
5  unestablished business is prevented or interrupted, damages for prospective profits that might
6  otherwise have been made from its operation are not recoverable for the reason that their
7  occurrence is uncertain, contingent and speculative."). Plaintiff does not allege, for example, that
8  she received a job offer but turned it down—and her own allegations would appear to foreclose
9  that possibility as she engaged in no search at all. This case contrasts with *Miller v. Fairchild
10 Industries, Inc.*, 885 F.2d 498, 509-10 (9th Cir. 1989) (plaintiffs signed settlement agreements
11 with their employer forgoing their right to sue for employment discrimination under Title VII in
12 exchange for additional training opportunities; their employer knew, but did not disclose, that
13 plaintiffs were likely candidates for layoffs, creating grounds for a false promise claim because the
14 layoff denied them the promised benefit of the settlement training).

### b. Intentional Infliction of Emotional Distress (IIED)

Plaintiff also brings an IIED claim based, *inter alia*, on allegations that Pachouri engaged in "rude, bullying behavior toward Plaintiff and other females," "made a point to refuse to shake Plaintiff's hand," and "repeatedly excluded Plaintiff from work events." Compl. at ¶ 20. She calls his conduct "despicable and outrageous," "malicious and oppressive," and intended to cause (and in fact causing) severe emotional distress. *Id.* at ¶ 48. In her Reply, she reiterates these pleadings, alleging "bullying, ridicule, false accusations, and harassment . . . beyond all bounds of decency." Reply at 7.

Defendants argue that Plaintiff does not plead sufficient specific facts supporting her IIED claim. Mot. to Dismiss Pl.'s First Am. Compl. at 12. But under the permissive fraudulent joinder standard, inadequate specificity in the pleadings is not grounds for fraudulent joinder because she could "possibly" amend the complaint to be more specific. *Grancare,* 889 F.3d at 550; *see also Tuttle v. Wells Fargo Bank, N.A.*, No. 18-CV-01544-JCS, 2018 WL 2412289, at *5 (N.D. Cal. May 29, 2018) (holding that the fraudulent joinder standard was not met where a claim could be

1 dismissed "with leave to amend, not with prejudice" beacuse it would require "reviewing multiple
2 rounds of amended pleadings . . . cross[ing] the line from [a] threshold inquiry to instead presiding
3 over a dispute under state law"). Plaintiff could possibly allege with more specificity, for instance,
4 precisely what acts constituted "bullying" or "harassment."

Defendants also argue Plaintiff's IIED claim is precluded by the workers' compensation program. Mot. to Dismiss Pl.'s First Am. Compl. at 11. In *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 903 (2008), the California Supreme Court held that plaintiffs who alleged they were wrongfully terminated whistleblowers could not sue for IIED outside of the workers' compensation program, because the program is the exclusive remedy for workplace injuries. In *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144 (2014), the Court of Appeal broadly construed *Miklosy* to preclude any IIED claim predicated on a wrongful termination in violation of public policy. *Yau*, 229 Cal. App. 4th at 156 (2014). Notably, the IIED claims in *Yau* and *Miklosy* were premised on alleged violations of California whistleblower protections; neither court considered whether IIED could proceed on the basis of alleged FEHA violations, as Plaintiff has asserted here.

The California Court of Appeals has subsequently held that IIED claims may still be premised on FEHA violations without running afoul of the workers' compensation doctrine. *See Light v. Cal. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 99 (2017). Under *Light*, Plaintiff's IIED claim against Pachouri could "possibly" succeed because she alleges discrimination under FEHA and also harassment. *See also Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 288 (2009) ("Neither discrimination nor harassment is a normal incident of employment."). She alleges Pachouri personally engaged in "rude and bullying behavior" and "harassment" of her and other women; though this is a vague and conclusory allegation, vagueness can theoretically be cured through amendment and more specific pleadings; vagueness is not necessarily enough to merit a finding of fraudulent joinder. *See Tuttle*, *supra*. In this case, Plaintiff has explicitly alleged specific examples of differential treatment of women, such as "refus[ing] to offer Plaintiff additional training for career growth, as such was offered to male employees, lied to Plaintiff that she would not be receiving a raise because no one was receiving

13

raises when Ericsson did, in fact, give male employees raises, . . . focused on the career growth and opportunities for male employees, but not for Plaintiff and other female employees, . . . [and] provided special assistance to male employees in obtaining certifications not provided to female employees." Compl. ¶ 20. This alleged atmosphere of differential treatment makes it more possible that if Plaintiff more specifically alleges acts of harassment or bullying, she can possibly link it to gender bias. Thus, with respect to this claim, under the foregoing standard applicable here, Plaintiff did not fraudulently join Pachouri.

Because Plaintiff's IIED claim against Pachouri survives, he must be considered for diversity jurisdiction. As Pachouri and Plaintiff are both citizens of California, there is no complete diversity, and the Court lacks diversity jurisdiction.

## IV. CONCLUSION

The Court lacks federal subject matter jurisdiction. Resolution of Plaintiff's state law claims does not necessarily raise a substantial federal question. Defendants have not demonstrated diversity jurisdiction because they have not demonstrated that none of Plaintiffs' claims against Defendant Pachouri could "possibly" succeed. This case must be **REMANDED** to the Superior Court. In light of the remand, Defendants' motion to dismiss is **DENIED** as moot.

This order disposes of Docket Nos. 13 and 19. The Clerk is ordered to remand the case to Alameda County Superior Court and to close the case.

**IT IS SO ORDERED**.

Dated: August 1, 2018

_____
EDWARD M. CHEN
United States District Judge